IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT SCHUMANN, individually and on behalf of other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN EXPRESS COMPANY; and AMERICAN EXPRESS NATIONAL BANK, Successor by merger to American Express bank FSB,<br><br>Defendants. | **Case No:** 1:25-cv-9731 |

### MEMORANDUM IN SUPPORT OF AMERICAN EXPRESS COMPANY'S AND AMERICAN EXPRESS NATIONAL BANK'S UNOPPOSED MOTION TO COMPEL ARBITRATION

Pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), defendants American Express Company and American Express National Bank ("American Express"), hereby moves this Court for an order directing plaintiff Robert Schumann ("Plaintiff") to arbitrate this dispute and staying the action pending completion of arbitration. Plaintiff does not oppose the motion. In support of its motion, American Express states:

### I.     INTRODUCTION

Plaintiff claims that American Express violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "ICFA"), by allegedly attempting to collect debts that it knew were based on fraud or mistake for accounts ending in 72008, and 66002. (the "Accounts"). American Express respectfully seeks an order requiring Plaintiff to arbitrate his claim pursuant to the arbitration provisions (the "Arbitration Agreements") in the cardmember agreements governing the Accounts. By its terms, the Arbitration Agreements broadly encompass

1

any claim, dispute or controversy relating to the Accounts. Plaintiff's alleged controversy regarding American Express's attempts to collect past due amounts on the accounts are plainly within the broad scope of the Arbitration Agreements. By the express terms of the Arbitration Agreements, any such controversy must be resolved in arbitration rather than before this Court.

Under the FAA, agreements to arbitrate are presumed to be valid and enforceable according to their terms. Indeed, in a series of recent decisions, the United States Supreme Court has repeatedly reaffirmed that the FAA strongly favors the validity and enforceability of arbitration agreements and that the terms of such agreements must be vigorously enforced. See <u>Am. Express Co. v. Italian Colors Rest.</u>, 133 S. Ct. 2304, 2309 (2013); <u>Marmet Health Care Ctr., Inc. v. Brown</u>, 565 U.S. 530, 532 (2012); <u>CompuCredit Corp. v. Greenwood</u>, 565 U.S. 95, 98 (2012); <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 336 (2011). This line of precedent makes clear that arbitration agreements, like the Arbitration Agreements here, must be enforced as written.

Accordingly, American Express respectfully requests that the Court enter an order: (1) directing Plaintiff to arbitrate all disputes related to his Accounts, pursuant to the terms of the Arbitration Agreements; and (2) staying this action until it has been resolved through arbitration.

## II. FACTUAL BACKGROUND

### A. Plaintiff's American Express Account And the Arbitration Agreement

American Express opened the 72008 Account, originally ending in 71000, on or about June 4, 2015. (Declaration of Raquel Hernandez ("Hernandez Decl.") ¶ 3.)[1] The 65004 Account, originally ending with 61003, was opened on or about February 22, 2016. (<u>Id.</u> ¶4.) At that time of opening the accounts, consistent with its standard business practices, American Express mailed Plaintiff his American Express cards together with a copy of his Cardmember Agreements

---

[1] The Hernandez Declaration is attached hereto as Exhibit "1."

2

governing the Accounts (the "Cardmember Agreements"). (Id. ¶ 5 & Exs. A, C.) The Cardmember Agreements states that when Plaintiff used the Account, he agreed its terms. (Id.) After receiving the Cardmember Agreements, Plaintiff made charges to the Accounts. (Id. ¶¶ 7,10 & Exs. B, D.) The Cardmember Agreements both provide, in pertinent part:

### Arbitration

You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.

**If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.**

(Id., Exs. A, C.) Moreover, the term "claim" is defined to broadly include:

*Claim* means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. *Claim* includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account.

(Id.) Plaintiff did not reject or opt-out of the Arbitration Agreement in either of the Cardmember Agreements. (Id. ¶¶ 8, 11.)

### B. Allegations Of The Amended Complaint

Plaintiff alleges that American Express attempted to collect debts that it "knew or should

3

have known was based on fraud or mistake and that it had previously treated as charged off." (Compl. ¶ 32.) Specifically, Plaintiff alleges that American Express agreed to remove disputed charges from his account, but later opened a new account and reinstated those charges on the new account. (Id. ¶¶ 12,14-15.) Plaintiff alleges American Express then sent correspondence demanding payment for the charges, which he disputed. (Id. ¶¶ 18-19.) Plaintiff alleges that American Express charged him for charges he disputed and that had previously been forgiven. (Id. ¶ 35.) Plaintiff further alleges that agents for American Express made deceptive statements and told him he would not be responsible for paying the charges. (Id. ¶ 39.) Plaintiff claims to have met with "consistent obfuscation and outright misleading statements." (Id. ¶ 41.) Plaintiff claims that American Express' actions caused economic and emotional damages. (Id. ¶¶ 47-59.)

### III.    ARGUMENT

#### A. The Court Should Compel Arbitration Pursuant To 9 U.S.C. § 4.

The FAA provides that "[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C.A. § 4. This Court should issue an order compelling arbitration because: (1) the Arbitration Agreement is an enforceable agreement between American Express and Plaintiff to submit disputes to binding arbitration; and (2) through the pending action, a controversy exists between Plaintiff and American Express that is subject to the Arbitration Agreement.

4

**B. Plaintiff's Claims Are Subject To Binding Arbitration Pursuant To The Arbitration Agreement.**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." Concepcion, 131 S. Ct. at 1745 (internal citations omitted); see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); see also Perry v. Thomas, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25; see also Perry, 482 U.S. at 490 (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'." (citations omitted)).

Pursuant to the FAA, arbitration must be compelled where, as here: (1) a valid agreement to arbitrate exists; and (2) the dispute at issue falls within the scope of the arbitration agreement. See Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 523 (3d Cir. 2009). An arbitration agreement governed by the FAA, like the Arbitration Agreement here, is presumed to

be valid and enforceable. See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626–27, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). The party seeking to avoid arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

As demonstrated below, the Arbitration Agreements are valid under applicable law and the controversy between Plaintiff and American Express are clearly within their scope. Accordingly, the Arbitration Agreement must be enforced as written.

### 1. A Valid Agreement To Arbitrate Exists Under Utah Law.

The Cardmember Agreements between Plaintiff and American Express, which includes the Arbitration Agreements, are expressly governed by a Utah choice-of-law provision. (Hernandez Decl. Exs. A, C, Part 2 of 2 at 5 (provision entitled "Governing Law").) Thus, while the FAA governs the enforceability of the Arbitration Agreement, Utah law governs the determination of whether a valid agreement to arbitrate exists. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); Shaw Group Inc. v. Triplefine Intern. Corp., 322 F.3d 115, 120 (2d Cir. 2003) ("Whether parties have obligated themselves to arbitrate certain issues, including the question of arbitrability, is determined by state law.").

There is no question that the Cardmember Agreement, including the Arbitration Agreement, are valid under Utah law. Utah law provides:

> A credit agreement is binding and enforceable . . . if: (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any

6

> use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e). Further, Utah law expressly allows arbitration provisions to be included in open-end credit agreements. See Utah Code Ann. §§ 70C-4-102(b) (providing that "[a] creditor may change an open-end consumer credit contract in accordance with this section to include arbitration or other alternative dispute resolution mechanism"), 70C-4-105 (providing that "a creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract").

Here, consistent with Utah law, American Express provided Plaintiff with his Cardmember Agreements along with his credit cards when it opened the Accounts (Hernandez Decl. ¶ 5, Exs. A, C.) The Cardmember Agreements state: "When you or an Additional Cardmember as defined below, use the Account . . . you agree to the terms of the [Cardmember] Agreement." (Id. Exs. A, C, Part 2 of 2 at 1 (provision entitled "About your Cardmember Agreement").) Plaintiff thereafter used the Accounts, thereby accepting the terms of the Cardmember Agreements, including the Arbitration Agreement. Accordingly, as numerous other courts have found, the Arbitration Agreement is a valid and enforceable agreement to arbitrate under Utah law. See, e.g., Aneke v. Am. Express Travel Related Services, Inc., 841 F. Supp. 2d 368, 376, 378 (D.D.C. 2012) (holding that arbitration agreement is "valid and enforceable under Utah law, which is the relevant state law in this case" and rejecting plaintiffs' "policy argument about the limits of arbitration and the prejudicial impact it has on their statutory claims"); Khanna v. Am. Express Co., No. 11 Civ. 6245 (JSR), 2011 WL 6382603, at *3-4 (S.D.N.Y. Dec. 14, 2011) (arbitration agreement is "binding and enforceable" under Utah law where cardmember agreement provided that use of the card constituted assent to the agreement's terms and plaintiff used the card); Miller v. Corinthian Colls.,

7

Inc., 769 F. Supp. 2d 1336, 1348-49 (D. Utah 2011) (holding that arbitration provision is not substantively or procedurally unconscionable under Utah law); Smith v. ComputerTraining.com Inc., 772 F. Supp. 2d 850, 856-57 (E.D. Mich. 2011) (enforcing Utah choice-of-law provision and finding that arbitration provision is not unconscionable under Utah law), aff'd, 531 F. App'x 713 (6th Cir. 2013); Spann v. Am. Express Travel Related Servs. Co., Inc., 224 S.W.3d 698, 718 (Tenn. Ct. App. 2006) (upholding American Express's Arbitration Provision under Utah law against an unconscionability challenge).

### 2. Plaintiff's Claims Falls Squarely Within The Scope Of The Arbitration Agreements.

Where the parties have entered into a valid arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors, 473 U.S. at 626. Where the arbitration clause is broad, there is a heightened presumption of arbitrability, such that, "'[in] the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" AT&T Tech., 475 U.S. at 650 (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

The Arbitration Agreement here broadly encompass "any current or future claim, dispute or controversy" relating to Plaintiff's Accounts, the Cardmember Agreements or "any agreement or relationship you have or had with us . . ." (Hernandez Decl. Ex. A, C.) The term "claim" includes "claims based upon contract, tort, fraud, statute, regulation, common law and equity" and expressly includes "claims that arise from or relate to . . . any account created under any of the

8

agreements, or any balances on any such account." (Id., Exs. A, C.) This language is broad enough to cover the disputes at issue here. In this case Plaintiff asserts statutory claims that American Express is potentially liable under the ICFA based upon its alleged practices "relating to" the Accounts.

The language in the Arbitration Agreement precisely covers the dispute at issue here. As an initial matter, Plaintiff's claims and the parties' dispute over potential liability under the IFCA "relat[e] to [Plaintiff's] Account" and to "any balances on . . . such account" as well as "[Plaintiff's] relationship . . . with [American Express]." Id.

Indeed, courts have routinely held that consumers must arbitrate their claims against American Express pursuant to arbitration agreements between American Express and its cardmembers. See Traeger v. Am. Express Bank FSB, No. 13-C-05337, 2014 WL 340421, at *9 (N.D. Ill. Jan. 30, 2014) (holding that plaintiff's FCRA claim arises under the cardmember agreement between plaintiff and American Express); see also Buckley v. Am. Express Co., No. CV.12-00192-GAF-MRWX, 2012 WL 12894182, at *5 (C.D. Cal. Aug. 22, 2012) (holding that plaintiff's claims for violation of the FCRA and other state law claims should be submitted to arbitration).

In light of the foregoing, there is no question that Plaintiff's dispute falls squarely within the terms of the Arbitration Agreement to which he indisputably consented.

### C. Plaintiff Should Be Compelled To Pursue His Claims On An Individual Basis.

The FAA is designed to "ensure that private agreements to arbitrate are enforced according to their terms." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53-54, 115 S. Ct. 1212 (1995) (internal quotation marks and citation omitted). Indeed, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

9

submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588 (2002) (internal quotation marks and citation omitted); see also James, 417 F.3d at 677 (commenting that "a party can be compelled to arbitrate only those matters that she has agreed to submit to arbitration" (citations omitted)); Sweet Dreams, 1 F.3d at 641 (recognizing that "the duty to arbitrate remains one assumed by contract and we will not compel parties to arbitrate disputes unless they have agreed to do so" (citation omitted)). "[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." EEOC v. Waffle House, Inc., 534 U.S. 279, 289, 122 S. Ct. 754 (2002).

In this case, the Arbitration Provision explicitly provides that, upon election by either party, arbitration should proceed on an individual basis. (Hernandez Decl. ¶¶ 6, 9, Ex. A., C) ("You and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration.") In this regard, the Seventh Circuit has upheld the validity of arbitration agreements that contain a class action waiver. See, e.g., Livingston, 339 F.3d at 559 ("The Arbitration Agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing class action arbitration, so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis.") (citing Champ v. Siegel Trading Co., Inc., 55 F. 3d 269, 277 (7th Cir. 1995)); James, 417 F.3d at 678 (affirmed district court's judgment and found consumer bound to arbitration provision contained in the Official Rules of a promotional contest, which included a class action waiver). Therefore, this Court's Order should compel Plaintiff to arbitrate his respective claims in strict accordance with the express terms of the Cardmember Agreements -- i.e., solely on an individual basis

**D. The Action Must Be Stayed Pending Arbitration.**

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Because Plaintiff must be compelled to arbitrate his claims, the action should be stayed pending completion of arbitration.

## IV. CONCLUSION

For the foregoing reasons, American Express respectfully requests that the Court grant this Motion and enter an order directing Plaintiff to arbitrate her dispute against American Express and staying the action pending completion of arbitration.

| | |
|---|---|
| Dated: August 21, 2025 | Respectfully submitted, |
| | /s/ Stephen J. Newman |
| | Stephen J. Newman<br>Steptoe LLP<br>2029 Century Park East, Suite 980<br>Los Angeles, CA 90067<br>213-439-9411<br>snewman@steptoe.com |
| | Michael A. O'Rourke<br>Steptoe LLP<br>227 West Monroe Street, Suite 4700<br>Chicago, IL 60606<br>312-577-1239<br>morourke@steptoe.com |
| | *Attorneys for Defendants*<br>*American Express National Bank and*<br>*American Express Company* |

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that, on the 21st day of August, 2025, a copy of the foregoing was filed with the Court's electronic filing system and served on all counsel of record via the Court's automatic system.

                                             */s/ Stephen J. Newman*
                                             Stephen Newman